***NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
:
ROBERT KAPPLER,                        :  Civil Action No. 08-5251 (FLW)
                                       :
          Plaintiff,                   :
                                       :
     vs.                               :
                                       :  **OPINION**
COMMISSIONER OF SOCIAL SECURITY,       :
                                       :
          Defendant.                   :
_____:

**WOLFSON, United States District Judge:**

     Robert Kappler ("Plaintiff") appeals from the final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff disability benefits under the Social Security Act ("the Act"). The Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). On appeal, Plaintiff contends that he is entitled to disability insurance benefits ("DIB") under §§ 216(i) and 223(d) of the Act, and supplemental security income ("SSI") under § 1614(a)(3)(A) of the Act. Specifically, Plaintiff maintains that the Administrative Law Judge ("the ALJ"), at Step Five of the sequential process, erroneously found that Plaintiff has the functional capacity to perform substantial gainful activity. After reviewing the Administrative Record, this Court finds that the ALJ's decision with regard to Plaintiff's eligibility for DIB is supported by substantial evidence; however, her decision on Plaintiff's SSI claim is not supported by substantial evidence because she failed to consider whether the claim is a borderline age case. Therefore, the case is remanded for further administrative review consistent with this Opinion.

1

I.     Overview

   A.  Procedural History

Plaintiff was born on July 4, 1953.  He was 54 years old at the time of his administrative hearing in front of the ALJ.  On March 9, 2006, Plaintiff filed concurrent applications for disability insurance benefits and supplemental security income under the Act, claiming that he has been disabled since December 31, 1998.  The claims were denied by the Social Security Administration ("SSA") initially, and upon reconsideration on August 29, 2006.  Thereafter, Plaintiff requested and received an administrative hearing on January 24, 2008.  Plaintiff was not represented by counsel.  The ALJ rendered an unfavorable decision against Plaintiff on February 2, 2008, denying all claims and found that Plaintiff was not disabled.  Plaintiff subsequently filed an appeal, and the Appeals Council denied the request for review on June 12, 2008, making the ALJ's decision final.  Plaintiff filed the instant action on October 24, 2008.

   B.  Background Facts

Plaintiff is a veteran who served in the Navy between 1976 and 1984.  Administrative Record ("AR") 87.  It appears from the record that Plaintiff has never held any significant employment after his discharge from the Navy; he worked odd jobs in construction and general labor.  See AR 111.  Plaintiff appears to have a history of alcohol abuse, as noted by his military record, multiple stints of rehabilitation, and a DUI conviction in 1998.  AR 15.

As part of evaluating his application for disability benefits, the SSA requested a consultative psychological examination of Plaintiff by Dr. Marc Friedman on May 17, 2006.  Id.  Dr. Friedman noted that Plaintiff was malodorous but oriented as to date and location.  AR 206.  Although he tended to ramble, he used complete sentences.  Id.  He was irritable, agitated, and very

defensive about his problems with alcohol. Id. Notably, Plaintiff stated that he has not had a job since 1998 because he lost his driver licence due to the DUI conviction, and admitted that he really needs work but could not find any. AR 206-07. Dr. Friedman concluded that Plaintiff showed signs of depressive disorder and has a history of alcohol dependence, but is otherwise "competent to manage funds in his own behalf." AR 208.

A State Agency psychologist reviewed the records and concluded in a report dated June 8, 2006, that Plaintiff has no severe psychological impairments. AR 210. Plaintiff was found to have no restrictions in activities of daily living; mild difficulties in maintaining social functioning; no difficulties in maintaining concentration, persistence or pace; and no episodes of extended decompensation. AR 220. Plaintiff was deemed capable of understanding simple instructions to complete simple tasks in a reasonable amount of time. AR 222. Another Agency psychologist also reviewed the records on June 18, 2006, and concluded that Plaintiff is able to maintain pace, persistence and concentration in simple routine tasks. He also can relate appropriately to coworkers and the public in limited contact settings. AR 240.

In addition, Plaintiff's own written application stated that he can groom himself, shave, feed himself, do laundry, and microwave frozen food. AR 125-26. He shops in stores, watches TV and read newspapers. AR 127-28. Plaintiff stated that he has moderate difficulties in social functions, but is able to walk to his mother's to visit her and talk with his sister. AR 128-29.

In connection with his medical status, Plaintiff obtained his own consultation from Dr. Yorio, a physician he visited at a free clinic. AR 33. In a report dated February 15, 2007, Dr. Yorio diagnosed Plaintiff as having depression and anxiety. AR 242. Dr. Yorio determined that Plaintiff has marked difficulties in maintaining social functioning and deficiencies in

concentration, persistence or pace, see AR 245-46, and has had four or more episodes of decompensations within the past year. AR 246. Dr. Yorio also found that Plaintiff can frequently lift less than five pounds and occasionally lift anywhere between five to more than a hundred pounds. AR 247. Plaintiff has some mild to moderate limitations on some physical activites, but otherwise is only prohibited from climbing and crawling. AR 248-49. Dr. Yorio stated that he saw Plaintiff two times within two months. AR 242.

At the administrative hearing, Plaintiff testified that for the past ten years, he has held various temporary jobs from temp agencies, as well as under-the-table cash jobs. AR 37. Over the past year, Plaintiff has been working for his brother, doing odd jobs around the house such as cutting down trees, landscaping, moving rocks and boulders, doing cement work, and mowing the grass. AR 38. Plaintiff also testified that he has a report from Dr. Yorio diagnosing him as having a heart murmur, high cholesterol, high blood pressure and a prostrate gland problem. AR 26. However, the record does not contain such a report.

The ALJ also solicited testimony from a vocational expert, Ms. Levin, to assist with the determination of whether Plaintiff may be able to perform work available in the national economy. The ALJ posed the following hypothetical question to the expert: "[I]n the universe of unskilled light work recognized by the Commissioner, if an individual needs a job with no sustained public contact, no mandated teams, what percentage of those, if any, would be eroded by eliminating sustained public contact and mandated teams?" AR 40. Ms. Levin testified these limitations would reduce the list of available jobs by ten percent, at most twenty percent. Id. Ms. Levin further testified that the remaining eighty percent would still constitute a significant number of available jobs. AR 41.

### C. The ALJ's Findings

The ALJ began by finding that based on Plaintiff's earning record, he has "acquired sufficient quarters of coverage to remain insured through December 31, 1998." AR 9. Plaintiff, therefore, must establish disability on or before that date in order to be eligible for DIB. The ALJ then applied the standard five-step process in determining if Plaintiff has in fact satisfied his burden of establishing disability. AR 11.

At Step One, the ALJ found that the earning record substantiates the claim that Plaintiff has not engaged in substantial gainful activities since December 31, 1998. Id. At Step Two, the ALJ found, based on the above factual findings, that Plaintiff suffers from severe impairments caused by depression and anxiety. Id. At Step Three, the ALJ found that Plaintiff's combination of impairments do not meet or medically equal one of the listed impairments under SSA regulations that would automatically find Plaintiff disabled. Based on the facts of the case, the ALJ found that Plaintiff is not markedly restricted in activities of daily living; does not have marked difficulties in maintaining social functions; does not have marked difficulties in maintaining concentration, persistence, or pace; and, despite Dr. Yorio's report suggesting that Plaintiff has had four decompensations within a year, has not suffered repeated episodes of decompensation. AR 12. With regard to Plaintiff's mental impairments, the ALJ discounted Dr. Yorio's report by reasoning that nothing in the report, or in the record, suggests that Plaintiff has suffered any episodes of decompensation, and without more, Dr. Yorio's assertion is not supported by evidence. Id.

At Step Four, the ALJ determined that after the date of filing of Plaintiff's application to the present, Plaintiff has the residual functional capacity ("RFC") to perform light exertion work

that does not require mandated teams or sustained public contact. AR 13. Prior to his date of filing, however, Plaintiff was capable of heavy exertion work. Id. The ALJ made his findings primarily based on Plaintiff's testimony that he is able to function in daily activities and also has been able to work, albeit sporadically due to difficulties in securing employment. AR 14. The ALJ also found that the medical evidence supports this finding, see AR 15-16, and that the sole support for Plaintiff's assertion of disability – Dr. Yorio's report – was not credible, because Dr. Yorio's diagnosis was not based on objective medical signs or objective diagnostic evidence, nor supported by any treatment notes. AR 15. The ALJ also noted that Dr. Yorio only saw Plaintiff twice. Id.

     Having determined Plaintiff's RFC, the ALJ went on to hold that based on earning records, it is uncertain that Plaintiff has any past relevant work, therefore no determination can be made whether Plaintiff can return to past work. AR 16. Proceeding to Step Five, the ALJ then held that since Plaintiff was born on July 4, 1953, he was 45 years old at the onset of his disability, and should be placed in the "younger individual" category when making the Step Five determination. Id. The ALJ further found that Plaintiff has at least a high school education and is able to communicate in English, and that transferability of job skills is not material because Plaintiff is found to be limited to unskilled labor. Id. Finally, based on the foregoing findings and the vocational expert's testimony at the hearing, the ALJ found that a significant number of jobs exists in the national economy that Plaintiff can perform. Therefore, Plaintiff is not disabled, as defined by the SSA, at any time through the date of the ALJ's decision. AR 17.

II.     Discussion

    A.  Standard of Review

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); see Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings have support by such evidence, Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for that of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. See Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986).

**B. Standard for Entitlement of Benefits**

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. See 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); see Plummer, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. 42 U.S.C. § 1382c(a)(3)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. See 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he is not currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a); see Bowen v. Yuckert, 482 U.S. 137, 146-47 n. 5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he/she is automatically denied disability benefits. See 20 C.F.R. § 404.1520(b); see also Bowen, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); see Bowen, 482 U.S. at 146-7 n. 5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities

include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." Id. A claimant who does not have a severe impairment is not considered disabled. 20 C.F.R. § 404.1520(c); see Plummer, 186 F.3d at 428. Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his/her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his/her burden of proof and is automatically entitled to benefits. See 20 C.F.R. § 404.1520(d); see also Bowen, 482 U.S. at 146-47 n. 5. If the specific impairment is not listed, the ALJ will consider in his/her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. See 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. Id. An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. Williams, 970 F.2d at 1186.

     If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he/she retains the residual functional capacity to perform his/her past relevant work ("PRW"). 20 C.F.R. § 404.1520(e); Bowen, 482 U.S. at 141. If the claimant is able to perform her previous work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); Bowen, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. Plummer, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer

able to perform his/her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." Bowen, 482 U.S. at 146-47 n. 5; Plummer, 186 F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. Id.

### C. Plaintiff's Claims on Appeal

The ALJ determined, and the parties do not dispute, that Plaintiff satisfied the first four steps of the five-step process. However, the Plaintiff asserts that the ALJ erred at Step Five because 1) the ALJ did not take into account, as required by SSA regulations, that Plaintiff is on the borderline between two age categorizations; and 2) the ALJ failed to consider Dr. Yorio's medical records.

### 1. Plaintiff's Age

Plaintiff argues that because he was 54 years, 7 months old at the time of the administrative hearing, he falls on the borderline of two age categories as defined by the SSA regulations (age 50-54 vs. age 55 or older), see 20 CFR § 404.1563, and is entitled to the mandatory "borderline" considerations as defined by 20 CFR § 404.1563(b). The provision states:

> We will not apply the age categories mechanically in a borderline situation. If you are within **a few days to a few months** of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case

(emphasis added). The Court notes that while § 404.1563 only governs DIB, 20 CFR §

416.963, which governs SSI, contains virtually identical language as § 404.1563.  Thus, the borderline consideration applies to both DIB and SSI.

In Lucas v. Barnhart, the Third Circuit held that in "'borderline' age cases, the SSA cannot mechanically apply the Grids' age categories, but must 'give full consideration to all relevant facts.'" 184 Fed.Appx. 204, 206 (3d. Cir. 2006) (quoting Kane v. Heckler, 776 F.2d 1130, 1134 (3d. Cir. 1985)).  The Lucas court explained that "[t]he relevant question is whether the individual's age would allow him or her to adapt to a new job." Lucas, 184 Fed.Appx. at 206.  Ultimately, the court remanded the case because "the record does not contain factual findings relevant to the § 404.1563(b) inquiry into whether Lucas was entitled to consideration . . . as a borderline age case." Id. at 208.

In this case, with regard to Plaintiff's DIB claim, Plaintiff's argument is misplaced.  To be eligible for DIB, Plaintiff must prove that the onset of disability occurred while Plaintiff was insured under 42 U.S.C. § 423(c).  Plaintiff claims a disability onset date of December 31, 1998, and the ALJ generously applied § 423 to hold that Plaintiff was insured through that date, but no later.  However, the ALJ went on to find that Plaintiff was not disabled on that date, due to her determination that Plaintiff was not, has never been, and is not currently disabled as defined by the regulations.[1]  Hence, there is no borderline age issue with regard to Plaintiff's DIB claim because, as noted above, the relevant date is when Plaintiff was last deemed "insured."  At the time Plaintiff lost his DIB insured status, the ALJ correctly noted that Plaintiff was only 45 years old, and considered a "younger individual," a category that is lower

---

[1] The sufficiency of the ALJ's merit-based determination of Plaintiff's disability is discussed in the next section.

on the Grid than the one to which Plaintiff currently belongs. As such, the Court finds that no borderline consideration is necessary in determining Plaintiff's DIB claim.

On the other hand, unlike DIB, SSI is not an insurance program. It is a welfare program "[f]or the purpose of establishing a national program to provide supplemental security income to individuals who have attained age 65 or are blind or disabled." 42 U.S.C. § 1381 (2009). "Every aged, blind, or disabled individual who is determined . . . to be eligible on the basis of his income and resources shall, in accordance with and subject to the provisions of this title, be paid benefits by the Commissioner of Social Security." 42 U.S.C. § 1381a. Since a claimant is continuously eligible for SSI benefits, so long as he or she meets the statutory requirements, the disability onset date is of secondary concern, because the relevant issue is whether Plaintiff was disabled at the time the determination was made. See Allen v. Bowen, 881 F.2d 37, 39 (3d. Cir. 1989) (using plaintiff's age at the time of the administrative hearing in making a § 416.963(b) inquiry).

While the ALJ conducted a determination of Plaintiff's disability status based on his condition at the time of the hearing, there is nothing in the record that shows that the ALJ made a § 416.963(b) inquiry into whether Plaintiff's age was considered borderline. In fact, the ALJ appears to have erroneously used the disability onset date of December 31, 1998, as the basis of her § 416.963 determination, see AR 16, thereby placing Plaintiff in the "younger individual" category. Clearly, Plaintiff should have at least been placed in the "approaching advanced age" category (age 50-54). Neither the regulations nor a survey of the relevant case law reveals a bright-line rule defining the borderline time frame of "a few days to a few months." Indeed, the inquiry must take into account the specific circumstances of the case. Here, the ALJ's

decision lacks any factual findings as to Plaintiff's proper age, whether that age is considered borderline, and Plaintiff's disability status based on such determination. Accordingly, the Court finds that the ALJ failed to make the proper § 416.963(b) inquiry into whether Plaintiff was entitled to consideration as a borderline age case for his SSI claim.

### 2. Dr. Yorio's Medical Records

#### a. DIB Claim

Plaintiff also contends that the ALJ erred because she failed to consider Dr. Yorio's medical records. With regard to Plaintiff's DIB claim, the Court finds this contention unpersuasive. As noted above, the relevant issue in Plaintiff's DIB claim is whether Plaintiff suffered a disability while he was insured. To that end, the ALJ found that Plaintiff's coverage ran out on the same day as his alleged disability onset date. Furthermore, the ALJ correctly placed Plaintiff in the "younger individual" category because he was 45 years old at that time. Finally, the ALJ held that even if using Plaintiff's current symptoms and medical conditions as the basis to determine Plaintiff's disability status then, Plaintiff would not be disabled according to SSA regulations. Plaintiff offered no evidence to the ALJ to suggest that his conditions were somehow worse nine years prior. Indeed, Dr. Yorio's examinations, which Plaintiff offered as evidence of his disability, occurred many years after the onset date, and nothing indicates that the impairments found by Dr. Yorio existed on or before that date. Accordingly, the Court finds that the ALJ's determination in this regard was proper and supported by substantial evidence.

#### b. SSI Claim

In contrast, Dr. Yorio's medical records are material to the disposition of Plaintiff's SSI

claim because the claim is dependent upon a determination of Plaintiff's current disability status.  Plaintiff argues that the ALJ failed to properly consider Dr. Yorio's February 15, 2007, report; specifically, Dr. Yorio's diagnoses that Plaintiff has had four episodes of decompensations within a year, and that he can frequently lift only less than five pounds.  This is contrary to the record because, as summarized above, the ALJ did not ignore the report, but found it not credible.  There is substantial evidence in the record to support such a finding, which the ALJ enumerated in her decision.  This Court is not empowered to weigh the evidence or substitute that conclusion.  Williams, 970 F.2d at 1182.

Plaintiff also argues that the ALJ failed to consider additional diagnoses by Dr. Yorio, which revealed previously undiscovered physical impairments.  Plaintiff points to his testimony at the hearing informing the ALJ of these new findings.  However, these diagnoses are not in the report from Dr. Yorio.  The record shows that the ALJ considered Plaintiff's testimony, and found them unsubstantiated.  AR 14.  Plaintiff did not offer to the ALJ additional reports from Dr. Yorio to support his testimony, nor has Plaintiff made this Court aware of the existence of any such report.  The burden is on Plaintiff to demonstrate the existence of any impairments that may affect his disability status, and he has failed to do so.  Accordingly, the Court finds that the ALJ did properly consider Dr. Yorio's medical records.

**III.     Conclusion**

For the foregoing reasons, the Court finds that the ALJ's decision with regards to Plaintiff's DIB claim is supported by substantial evidence, but her decision on Plaintiff's SSI claim is not.  Therefore, the case is remanded for further administrative review consistent with this Opinion.

/s/ Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge

Date: February 8, 2010